UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| PABLO MAURICIO AYALA GARCIA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00444-JRS-MKK |
| | ) | |
| MARKWAYNE MULLIN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pablo Ayala Garcia is a noncitizen who was re-arrested by U.S. Immigration and Customs Enforcement (ICE) officials on June 24, 2026, and is detained at the Clay County Jail in Brazil, Indiana. Dkt. 1 at 1. The day after his arrest, ICE cancelled Mr. Ayala Garcia's bond, which was previously granted by an immigration judge in 2019. He claims that his bond was improperly revoked and now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or another bond hearing pursuant to 8 U.S.C. § 1226(a). Dkt. 1 at 19.

For the reasons explained below, the Court **grants** the petition and **orders** Respondents to **immediately release** Mr. Ayala Garcia from custody.

## I.       Background

Mr. Ayala Garcia is a citizen of El Salvador. Dkt. 1 at 1. He came to the United States through the Hidalgo Port of Entry in Texas on September 9, 2016. Dkt. 8-1 at 4. Mr. Ayala Garcia was briefly detained and questioned by immigration officials because he lacked valid documentation permitting him to enter the country. Dkt. 8-1 at 4. However, in October 2016, he was ultimately issued a Notice to Appear for removal proceedings, released on parole, and permitted to enter the United States. Dkt. 1; dkt. 8-1 at 1, 7. He has resided here ever since. Dkt. 1 at 1.

After entering the United States, Mr. Ayala Garcia subsequently moved to the interior of the country. Dkt. 8-1 at 7. He was previously arrested by ICE in October 2019 after it was discovered that he had a recent conviction for operating a vehicle while intoxicated. *Id.* However, an immigration judge granted Mr. Ayala Garcia release on bond in November 2019. *Id.* He has not had any further criminal convictions other than a minor traffic offense. Dkt. 1 at 1.

On June 24, 2026, Mr. Ayala Garcia was on his way to work when he was stopped by the Indiana State Police. Dkt. 8-1 at 7. The officer contacted ICE during the traffic stop, which resulted in ICE issuing an administrative warrant for Mr. Ayala Garcia's arrest. *Id.* Mr. Ayala Garcia was then arrested pursuant to the warrant (I-200 Warrant for Arrest of Alien) and eventually taken to the Clay County Jail in Brazil, Indiana, where he is being held without bond. Dkt. 1; dkt. 8-1 at 7.

The day after his arrest, ICE cancelled Mr. Ayala Garcia's bond from November 2019. Dkt. 8-2. This was done by a DHS official with the abbreviated title, "SDDO." *Id.* The Notice to Appear for removal proceedings from October 2016 charges him with inadmissibility as an alien without valid unexpired documents (§ 212(a)(7)(A)(i)(I) of the INA). The "arriving alien" box is checked. Dkt. 8-1 at 1.

## II.    Discussion

Mr. Ayala Garcia claims that his current detention is unlawful because his bond was not revoked in accordance with the applicable regulations. The Court agrees. But before discussing his bond revocation, the Court briefly addresses Respondents' contention that 8 U.S.C. § 1225, not § 1226, applies to Mr. Ayala Garcia and that he remains an "arriving alien" by virtue of his grant of parole into the country.

### A.  8 U.S.C. §§ 1226 and 1225

Respondents contend that 8 U.S.C. § 1225 applies to Mr. Ayala Garcia despite the fact that *they* have treated him as a noncitizen under 8 U.S.C. § 1226. As the Court has stated time and

again, while "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond . . . ; or

(B) conditional parole . . ..

8 U.S.C. § 1226(a).

An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national

security, and does not pose a risk of flight.'") (citing *In re Guerra,* 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

## B.  8 U.S.C. § 1226 Applies to Mr. Ayala Garcia

Respondents argue that Mr. Ayala Garcia is an arriving alien who is an applicant for admission into the United States and subject to mandatory detention under § 1225(b)(2)(A). Dkt. 8 at 3.

However, the Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to *enter* the United States rather than undocumented aliens like Mr. Ayala Garcia who have entered the country and

lived in the interior of the United States for years. *See, e.g., Alejandro v. Olson*, 817 F. Supp. 3d 672, 677 (S.D. Ind. 2025). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *See Alejandro*, 817 F. Supp. 3d at 677.

While the Seventh Circuit has not definitively ruled on the subject, the court in *Castañon-Nava v. U.S. Dep't of Homeland Sec.* determined that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. 161 F.4th 1048 (7th Cir. 2025). This is a decision that carries persuasive authority due to its procedural posture,[1] which reaffirms the Court's prior decisions where it applied the same established canons of statutory interpretation to cases where a noncitizen enters the United States in a place other than that designated by the Attorney General (*i.e.*, a place other than a designated port of arrival).

The reasoning in *Castañon-Nava* was adopted by the Second Circuit in *Barbosa da Cunha v. Freden*, when it explicitly rejected the government's contention that § 1225 controls for immigrants who entered without inspection or admission and are subsequently arrested in the interior of the United States. *See* 175 F.4th 61, 70-72, 88 (2d Cir. 2026) ("Although divided panels in two other circuits have agreed with the government, . . . we respectfully find the statutory

---

[1] *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F.4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

5

analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive."). The Second Circuit is joined by the Sixth and Eleventh Circuits, *see Lopez-Campos v. Raycraft*, 175 F.4th 713, 725 (6th Cir. 2026), *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1285 (11th Cir. 2026), and now the Tenth Circuit. *See Santillan Quiroz v. Mullin*, --- F.4th ----, No. 26-6019, 2026 WL 1876709 at *1 (10th Cir. June 30, 2026).

Importantly, Respondents' legal reasoning cannot be reconciled with the government's treatment of Mr. Ayala Garcia. The record reflects that Mr. Ayala Garcia arrived at the Hidalgo Port of Entry (a designated port of arrival), was detained by DHS officials, then "processed as [an] [e]xpedited [r]emoval." Dkt. 8-1 at 4. However, he was then released on parole and permitted to enter the country in 2016. *Id.* Later, he was arrested and detained by ICE in October 2019 but "an [immigration judge] granted [him] a $5000 immigration bond" and released him in November 2019. *Id.* Mr. Ayala Garcia remained in the United States, residing in Indiana and was arrested on a new administrative warrant explicitly authorizing his detention under § 1226—not § 1225. *See* dkt. 8-1 at 9. Respondents' contention that Mr. Ayala Garcia is now or still subject to mandatory detention under § 1225(b)(2)(A), despite having been granted "immigration bond" under § 1226(a), is completely misplaced.

To overcome this, Respondents contend that § 1225 nonetheless applies because Mr. Ayala Garcia entered the United States through a port-of-entry as a humanitarian parolee and was designated as an "arriving alien." Dkt. 8 at 3. They further argue that he remains an "arriving alien" based on a regulation supplying a definition for that term. *See id.* That regulation provides:

> The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . . An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.

8 C.F.R. § 1001.1(q).

In short, as Respondents argue, Mr. Ayala Garcia's parole under § 1182(d)(5) permitted him to physically enter the United States, but he never ceased to be—for legal purposes—an arriving alien and applicant for admission at a port of entry per the regulation.

The Court rejects Respondents' position for several reasons. First, § 1225(b)(2)(A) does not mandate the detention of "arriving aliens" as defined by regulation or even "applicants for admission" as referenced in § 1182(d)(5). As the Court discussed above, § 1225(b)(2)(A) applies only to an applicant for admission *who is also seeking admission*. The phrases carry different meanings. Section 1182(d)(5) directs that a former parolee be treated like any other applicant for admission, but not every applicant for admission is seeking admission and subject to § 1225(b)(2)(A).

Second, § 1001.1(q) is an agency regulation. Its sole legal significance is to clarify how the agency applies the term "arriving alien." Through § 1225(b)(2)(A), Congress authorized the government to subject specified noncitizens attempting to *enter* the country to automatic, indefinite detention during removal proceedings. As was discussed, that authority does not extend to a noncitizen who was treated as one under § 1226. That is, Mr. Ayala Garcia was permitted to enter the United States and establish residence before being arrested and released on immigration bond. He was then re-arrested in the middle of the country pursuant to a warrant citing—not § 1225 but a different statutory authority—§ 1226. Simply put, Mr. Ayala Garcia is not an applicant for admission who is seeking admission, so he is not subject to mandatory detention under § 1225(b)(2)(A).

Third, this Court has rejected a similar argument that a noncitizen granted parole under § 1182(d)(5)(A) upon arrival automatically becomes subject to § 1225(b)(2)(A) upon expiration of parole. *See, e.g.*, *Zafra Becerra v. Swearingen*, No. 2:26-cv-00438-JRS-MKK, dkt. 16 at *4–6

(S.D. Ind. July 7, 2026); *Madriz Ortiz v. Mullin*, No. 2:26-cv-00320-JPH-MKK, dkt. 11 at *5–7 (S.D. Ind. May 15, 2026). Those decisions have adopted the reasoning of *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025), which found that the government's reliance on § 1182(d)(5)(A) to invoke § 1225(b)(2)(A) was misplaced. Respondents do not grapple with the reasoning of those decisions and how a different result should be reached here.

The Court thus declines to find that Mr. Ayala Garcia is subject to mandatory detention under § 1225(b)(2)(A).

### C. Mr. Ayala Garcia's Immigration Bond was Improperly Revoked

Finally, the Court finds that Mr. Ayala Garcia's bond was improperly revoked. If a noncitizen is released on bond, "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). While the statute gives significant discretion to DHS[2] on whether to revoke bond, the agency must nevertheless follow their own regulations when doing so. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Zelaya Diaz v. Rosen*, 986 F.3d 687, 692 (7th Cir. 2021) ("*Accardi* and its progeny teach generally that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion."). The relevant regulation provides:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody

---

[2] "Although many of the provisions at issue in this case refer to the Attorney General, Congress has also empowered the Secretary of Homeland Security to enforce the Immigration and Nationality Act." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527, 141 S. Ct. 2271, 2280, 210 L. Ed. 2d 656 (2021).

and detained. If detained, unless a breach has occurred, any outstanding bond shall
be revoked and canceled.

8 C.F.R. § 1236.1(c)(9).

Indeed, the Respondents appear to have supplied Mr. Ayala Garcia with notice of his bond cancellation on June 25, 2026. Dkt. 8-2. However, it was signed by a Supervisory Detention and Deportation Officer or SDDO, *id.*, which is not an official listed in the regulation. *See Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1198 (W.D. Wash. 2025) ("A Supervisory Detention and Deportation Officer (SDDO)—the official who signed [the petitioner's] Notice of Custody Determination—is not among these enumerated officials."); 8 C.F.R. § 1236.1(c)(9); *see also Singh v. English*, No. 3:26-CV-113-CCB-SJF, 2026 WL 456716, at *3 (N.D. Ind. Feb. 18, 2026) (finding arrest warrant signed by a Supervisory Detention and Deportation Officer was insufficient to revoke bond because that official was not listed in 8 C.F.R. § 1236.1(c)(9)). *Cf. Portillo-Argueta v. Simon*, No. 1:25-CV-2285-AJT-WEF, 2026 WL 184194, at *4 (E.D. Va. Jan. 23, 2026) (finding the government failed to demonstrate a change in circumstances that could justify the revocation of the petitioner's bond); *Luna Sanchez v. Bondi*, No. 1:25-CV-018888-MSN-IDD, 2025 WL 3191922, at *4 (E.D. Va. Nov. 14, 2025) (same).

Respondents argue that Mr. Ayala was "notified of this cancellation," and fault him for failing to "support[] his position that a prior grant of bond changed his immigration status." Dkt. 8 at 6. They also argue that his bond could not be improperly revoked under § 1226 because that section does not govern his detention. *Id.* None of this, however, addresses the dispositive issue, which is whether the bond was revoked in accordance with the applicable regulation. Because there is nothing in the record supporting that the SDDO was properly delegated authority to revoke

9

bond, *see Singh*, 2026 WL 456716 (citing 8 C.F.R. § 2.1), the Court concludes that his bond was not properly revoked.[3]

### D. Remaining Claims

Mr. Ayala Garcia also claims that his detention violates the Fifth Amendment, arguing that the revocation of bond, or detention without the opportunity for bond, violates his due process rights. Dkt. 1 at 13-17. However, as the Court has found that his bond was improperly revoked and grants him relief on that ground, the Court declines to address his constitutional claims at this time. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

### III.    Conclusion

The Court **grants** the petition and **orders** Respondents to **immediately release Pablo Ayala Garcia from detention** on the previous conditions of bond. Respondents are **ordered** to file documentation **no later than 12:00 p.m. on July 31, 2026**, certifying that they have released Mr. Ayala Garcia from detention.

**IT IS SO ORDERED.**

Date: 07/30/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

---

[3] The Court notes that it is persuaded by the reasoning in *Singh*, 2026 WL 456716 at *3. The Court likewise notes that the finding today, regarding Mr. Ayala Garcia's bond being improperly revoked, is based solely on the government's failure to comply with the applicable regulation. As in *Singh*, Mr. Ayala Garcia argues that there is no change in circumstance justifying his bond revocation. Dkt. 11 at 1. But whether a change in circumstances exists "is a matter for the agency to decide," *id.* at *3 n.4, and the Court provides no opinion on the matter.

Distribution:

Kristin A. Hoffman
Gresk & Singleton
khoffman@gslawindy.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov